**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

**GAMIL KHARFAN, an individual**

      **Plaintiff,**                           **CASE NO.:**

**v.**

**EQUIFAX INFORMATION SERVICES, LLC,**
**EXPERIAN INFORMATION SOLUTIONS,**
**INC., AND TRANSUNION LLC,**

                                                 **DEMAND FOR JURY TRIAL**

      **Defendants.**

_____/

## COMPLAINT

Plaintiff, Gamil Kharfan ("Plaintiff" or "Mr. Kharfan"), by and through counsel, files this Complaint against Equifax Information Services LLC ("Defendant Equifax" or "Equifax"), Experian Information Solutions Inc., ("Defendant Experian" or "Experian"), and TransUnion LLC ("Defendant TransUnion" or "TransUnion"); pursuant to the Fair Credit Reporting Act, 15 USC §1681 *et seq.* ("FCRA") and the Florida Deceptive And Unfair Trade Practices Act §§ 501.201 *et seq.* ("FDUPTA"), and in support thereof states:

### JURISDICTION AND VENUE

1.　　This is an action for damages and equitable relief within the jurisdiction of this court pursuant to the Fair Credit Reporting Act, §1681 et seq. ("FCRA"), and Florida Deceptive And Unfair Trade Practices Act § 501.201 et seq. ("FDUTPA").

2.　　Jurisdiction of this Court arises under 15 U.S.C. §1681p, 28 U.S.C. § 1331, § 1337 and § 1367.

3.　　Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions on which the claims are based occurred in this District.

**DEMAND FOR JURY TRIAL**

4.      Mr. Kharfan, respectfully, demands a trial by jury on all counts and issues so triable.

**PARTIES**

5.      Mr. Kharfan is a natural person, and a citizen of the State of Florida, residing in Miami-Dade, Florida and is a "a "consumer" as defined by FCRA 15 U.S.C. § 1681a(c) and FDUTPA under Fla. Stat. § 501.203(7).

6.      Defendant Equifax is a Georgia limited liability company whose registered agent in Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. Equifax is a consumer reporting agency ("CRA") as defined by FCRA, 15 USC § 1681a(f). Equifax is engaged in "trade or commerce" as defined by FDUTPA under Fla. Stat. § 501.203(8).

7.      Defendant Experian is an Ohio corporation whose registered agent in Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. Experian is a CRA as defined by FCRA, 15 USC §1681a(f). Experian is engaged in "trade or commerce" as defined by FDUTPA under Fla. Stat. § 501.203(8).

8.      Defendant TransUnion is a Delaware limited liability company whose registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. TransUnion is a CRA as defined by FCRA, 15 USC § 1681a(f). TransUnion is engaged in "trade or commerce" as defined by FDUTPA under Fla. Stat. § 501.203(8).

**GENERAL ALLEGATIONS**

9.      This action involves derogatory and inaccurate reporting of an alleged consumer debt and fraudulent Barclays Bank ("Barclays" or "the data furnisher") credit card by the Credit Reporting Agencies, Equifax, Experian, and TransUnion (Equifax, Experian, and TransUnion are collectively, the "CRAs").

10.     The FCRA prohibits furnishers of credit information from falsely and inaccurately

reporting consumers' credit information to credit reporting agencies. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."

11.     On or about August of 2022, Mr. Kharfan began his pre-qualification process to purchase a residential property. Mr. Kharfan was pre-approved for a 6% 30-year term conventional loan to purchase a $3.1 million dollar condominium with a contract closing date of October 2022.

12.     On or about October of 2022, Mr. Kharfan discovered a fraudulent Barclays MasterCard Card account (the "Fraudulent Account") appearing on his credit report with late payments, causing Mr. Kharfan's credit score to decrease drastically.

13.     Mr. Kharfan promptly filed a Federal Trade Commission ("FTC") identity theft report, a formal complaint with the Consumer Financial Protection Bureau ("CFPB") and disputed the Fraudulent Account with each CRA and the data furnisher, Barclays.

14.     On or about November of 2022, Mr. Kharfan had yet to receive any written investigation results from the CRA's within a timely manner, accordingly, Mr. Kharfan was forced to reschedule closing date to allow the CRAs time to correct the errors on his credit report. The parties agreed to close in late November of 2022.

15.     On November 8, 2022, the data furnisher remitted the investigation results to Mr. Kharfan and the CRAs stating that Mr. Kharfan was "not responsible for the reported fraudulent activity" and to "allow up to 30 days for the consumer credit reporting agencies to remove any fraud-related information from [the] credit report." A true and correct copy of the furnisher's letter is attached hereto as Exhibit A.

16.     At closing in late November of 2022, Mr. Kharfan's credit file was still incorrect and so Mr. Kharfan, once again, rescheduled the closing date to December of 2022 with the

expectation that the CRAs would delete the Fraudulent Account in order to qualify for the 6% conventional loan at closing.

17.     At this point, the CRAs had failed to conduct a reasonable investigation of the Fraudulent Account, failed to block the Fraudulent Account throughout its investigatory period, and failed to provide Mr. Kharfan with a written investigation result within a timely manner, as established by the FCRA.

18.     The CRA's continued willfully and recklessly reporting the Fraudulent Account on Mr. Kharfan's credit report until sometime in March of 2023 despite receiving the FTC identity theft report, the written consumer disputes, and the data furnishers' investigation results establishing that the underlying account was, in fact, a Fraudulent Account.

19.     As a direct result of Defendants' failure to remove the Fraudulent Account in a timely manner, Mr. Kharfan was unable to close on his home purchase in November 2022 under the pre-approved 6% conventional loan.

20.     Due to the delay, Mr. Kharfan was forced to push the closing date to the end of January 2023. At this point, the sellers of the property were prepared to terminate the contract and keep the escrow deposit.

21.     Mr. Kharfan struggled to find another loan at the same 6% interest rate and ultimately had to secure an 8% 40 year statement loan, which resulted in significantly higher monthly payments, an increase in the down payment and closing costs, and overall loan costs.

22.     The delay also forced Mr. Kharfan to request an extension of his previous lease, which was granted at an exorbitant rental rate of $12,000 per month.

23.     Mr. Kharfan and his executive assistant spent significant time and effort communicating with the CRAs, the lender, and other parties involved in the closing, causing substantial inconvenience and wasted resources.

24.     During the holiday season, Mr. Kharfan was forced to scramble to find alternative

financing to avoid losing the property and escrow, creating extreme stress and anxiety.

25.     The uncertainty and financial burden caused Mr. Kharfan restlessness and mental distress throughout the home-buying process and the holidays.

26.     Mr. Kharfan was finally able to close on the property on January 26, 2023, but only after enduring significant hardship due to the Defendants' wrongful reporting practices.

27.     Mr. Kharfan's previous lease extension was only granted up until the closing date of January 26, 2023, as the landlord has other renters prepared and waiting to move into Mr. Kharfan's previous leased apartment. Accordingly, Mr. Kharfan had to close and move out of the apartment all in one day.

28.     Defendants Equifax, Experian, and TransUnion, as CRAs, failed to conduct a reasonable investigation into the disputed information as required under 15 U.S.C. § 1681i.

29.     Defendants Equifax, Experian, and TransUnion, as CRAs, failed to block the Fraudulent Account upon receiving the FTC identity theft report as required under 15 U.S.C. § 1681c.

30.     The actions and inactions of the Defendants have caused significant harm to Mr. Kharfan, including financial harm, damage to creditworthiness, and emotional distress.

**COUNT 1**
**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT**
(Against Defendant Experian)

31.     Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-30 of this Complaint.

32.     Defendant Experian prepared and issued consumer credit reports concerning Mr. Kharfan which previously included inaccurate and derogatory reporting of the Fraudulent Account.

33.     In or around October of 2022, Mr. Kharfan checked his credit report and noticed that there were inaccurate reports from Defendant Experian. Therefore, in or around October of

2022, Mr. Kharfan disputed this inaccurate and derogatory information to Experian.

34.     In or around November 8 of 2022, the data furnisher verified that the Fraudulent Account was fraudulent and instructed Experian to delete the Fraudulent Account by no later than December 8, 2022. Despite Experian having been put on notice of the inaccurate and derogatory reporting, Experian did not remove the inaccurate and derogatory reporting of the Fraudulent Account from Mr. Kharfan's Experian credit report.

35.     Experian is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau." Defendant Experian regularly obtains and analyzes financial information about consumer transactions or experiences with any consumer.

36.     Experian is a "consumer reporting agency" of consumers, as defined by § 1681a(f), and compiles the information into "credit reports," which it provides to third parties.

37.     Despite Defendant Experian having received Mr. Kharfan's dispute of the Fraudulent Account, Mr. Kharfan's FTC ID theft report, Mr. Kharfan's CFPB complaint, and the data furnisher's investigation results confirming the Fraudulent Account was fraudulent, Experian continued to inaccurately report the Fraudulent Account with an account balance and late payments.

38.     Continuing to report the status of the Fraudulent Account in this fashion was significant.

39.     By continuing to report the status of the Fraudulent Account in this fashion, lenders believed Mr. Kharfan had a recent, major delinquency negatively reflecting on Mr. Kharfan's creditworthiness by impacting his credit score negatively.

40.     Credit scoring algorithms take Mr. Kharfan's account status into consideration when generating a credit score and showing this incorrect account status would cause a lower credit score to be generated.

41.     Experian failed to conduct a reasonable investigation and reinvestigation.

42.     Experian failed to review and consider all relevant information submitted by Mr. Kharfan.

43.     Experian possessed evidence that the Fraudulent Account was inaccurate; however, Experian failed to correct the information.

44.     Experian's reporting of inaccurate information about the Fraudulent Account, despite evidence that confirmed the Fraudulent Account was inaccurate demonstrates Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit reports and file.

45.     Experian did not conduct any independent investigation after it received Mr. Kharfan's dispute and, instead, chose to ignore its statutory obligations despite being in possession of evidence that the Fraudulent Account was inaccurate.

46.     Mr. Kharfan has suffered damages as a result of the incorrect reporting and Experian's failure to correct the credit report pertaining to Mr. Kharfan.

47.     On at least one occasion within the past year, by example only and without limitation, Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Mr. Kharfan.

48.     Experian failed to establish or follow reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit reports and credit files when investigating Mr. Kharfan's dispute of the information contained in Mr. Kharfan's Experian credit report.

49.     Experian's procedures were per se deficient by reason of these failures in ensuring the maximum possible accuracy of Mr. Kharfan's credit reports and credit files.

50.     Experian has willfully and recklessly failed to comply with the FCRA. The failures of Experian to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information

reported; [b] the failure to block the information within 4 days of receipt of the FTC ID theft report; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate information which Experian had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan and that data furnisher that the information was inaccurate; [f] the failure to note in the credit report that Mr. Kharfan disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Experian to delete; and [h] the failure to take adequate steps to verify information Experian had reason to believe was inaccurate before including it in the credit report of the consumer.

51.     The conduct, action and inaction of Experian was willful, thereby rendering Experian liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

52.     Mr. Kharfan is entitled to recover reasonable costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

53.     The appearance of the Account on Mr. Kharfan's credit report, namely, the Account identified by Mr. Kharfan in Mr. Kharfan's dispute to Experian, was the direct and proximate result of Experian's willful failure to maintain reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit report in violation of the 15 U.S.C. § 1681e(b).

54.     As a result of the conduct, action, and inaction, of Experian, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

55.     WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant Experian, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1640(a)(1); [2] statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

[3] statutory damages pursuant to 15 U.S.C. § 1640(a)(2); [4] after reasonable showing by evidence in the record or proffered by Mr. Kharfan which would provide a reasonable basis for recovery of such, punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); [5] costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(3) and 1681n(a)(3); and [6] any other relief that this Court deems proper under the circumstances.

**COUNT 2**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**
(Against Defendant Experian)

56.     Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-55 above of this Complaint.

57.     On at least one occasion within the past year, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the Fraudulent Account.

58.     On at least one occasion within the past year, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Mr. Kharfan with respect to the Fraudulent Account.

59.     On at least one occasion within the past year, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(5) by failing to delete the Fraudulent Account.

60.     On at least one occasion within the past year, by example only and without limitation, Experian violated 15 U.S.C. § 1681c-2 by failing to block the Fraudulent Account.

61.     Experian has negligently failed to comply with the FCRA. The failures of Experian to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to block the information within 4 days of receipt of the FTC ID theft report; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate

information which Experian had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan and that data furnisher that the information was inaccurate; [f] the failure to note in the credit report that Mr. Kharfan disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Experian to delete; and [h] the failure to take adequate steps to verify information Experian had reason to believe was inaccurate before including it in the credit report of the consumer.

62.     The conduct, action, and inaction, of Experian was negligent, thereby rendering Experian liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(o).

63.     Mr. Kharfan is entitled to recover reasonable costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(o).

64.     As a result of the conduct, action, and inaction of Experian, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

65.     WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant Experian, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

### COUNT 3
### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Defendant Equifax)

66.     Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-30 of this Complaint.

67.     Defendant Equifax prepared and issued consumer credit reports concerning Mr. Kharfan which previously included inaccurate and derogatory reporting of the Fraudulent

Account.

68.    In or around October of 2022, Mr. Kharfan checked his credit report and noticed that there were inaccurate reports from Defendant Equifax. Therefore, in or around October of 2022, Mr. Kharfan disputed this inaccurate and derogatory information to Equifax.

69.    In or around November 8 of 2022, the data furnisher verified that the Fraudulent Account was fraudulent and instructed Equifax to delete the Fraudulent Account by no later than December 8, 2022. Despite Equifax having been put on notice of the inaccurate and derogatory reporting, Equifax did not remove the inaccurate and derogatory reporting of the Fraudulent Account from Mr. Kharfan's Equifax credit report.

70.    Equifax is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau." Defendant Equifax regularly obtains and analyzes financial information about consumer transactions or experiences with any consumer.

71.    Equifax is a "consumer reporting agency" of consumers, as defined by § 1681a(f), and compiles the information into "credit reports," which it provides to third parties.

72.    Despite Defendant Equifax having received Mr. Kharfan's dispute of the Fraudulent Account, Mr. Kharfan's FTC ID theft report, Mr. Kharfan's CFPB complaint, and the data furnisher's investigation results confirming the Fraudulent Account was fraudulent, Equifax continued to inaccurately report the Fraudulent Account with an account balance and late payments.

73.    Continuing to report the status of the Fraudulent Account in this fashion was significant.

74.    By continuing to report the status of the Fraudulent Account in this fashion, lenders believed Mr. Kharfan had a recent, major delinquency negatively reflecting on Mr. Kharfan's creditworthiness by impacting his credit score negatively.

75.    Credit scoring algorithms take Mr. Kharfan's account status into consideration

when generating a credit score and showing this incorrect account status would cause a lower credit score to be generated.

76.     Equifax failed to conduct a reasonable investigation and reinvestigation.

77.     Equifax failed to review and consider all relevant information submitted by Mr. Kharfan.

78.     Equifax possessed evidence that the Fraudulent Account was inaccurate; however, Equifax failed to correct the information.

79.     Equifax's reporting of inaccurate information about the Fraudulent Account, despite evidence that confirmed the Fraudulent Account was inaccurate demonstrates Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit reports and file.

80.     Equifax did not conduct any independent investigation after it received Mr. Kharfan's dispute and, instead, chose to ignore its statutory obligations despite being in possession of evidence that the Fraudulent Account was inaccurate.

81.     Mr. Kharfan has suffered damages as a result of the incorrect reporting and Equifax's failure to correct the credit report pertaining to Mr. Kharfan.

82.     On at least one occasion within the past year, by example only and without limitation, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Mr. Kharfan.

83.     Equifax failed to establish or follow reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit reports and credit files when investigating Mr. Kharfan's dispute of the information contained in Mr. Kharfan's Equifax credit report.

84.     Equifax's procedures were per se deficient by reason of these failures in ensuring the maximum possible accuracy of Mr. Kharfan's credit reports and credit files.

85.     Equifax has willfully and recklessly failed to comply with the FCRA. The failures of Equifax to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to block the information within 4 days of receipt of the FTC ID theft report; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate information which Equifax had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan and that data furnisher that the information was inaccurate; [f] the failure to note in the credit report that Mr. Kharfan disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Equifax to delete; and [h] the failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

86.     The conduct, action and inaction of Equifax was willful, thereby rendering Equifax liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

87.     Mr. Kharfan is entitled to recover reasonable costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

88.     The appearance of the Fraudulent Account on Mr. Kharfan's credit report, namely, the Fraudulent Account identified by Mr. Kharfan in Mr. Kharfan's dispute to Equifax, was the direct and proximate result of Equifax's willful failure to maintain reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit report in violation of the 15 U.S.C. § 1681e(b).

89.     As a result of the conduct, action, and inaction, of Equifax, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress,

mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

90.     WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant Equifax, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1640(a)(1); [2] statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); [3] statutory damages pursuant to 15 U.S.C. § 1640(a)(2); [4] after reasonable showing by evidence in the record or proffered by Mr. Kharfan which would provide a reasonable basis for recovery of such, punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); [5] costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(3) and 1681n(a)(3); and [6] any other relief that this Court deems proper under the circumstances.

**COUNT 4**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**
(Against Defendant Equifax)

91.     Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-30 and 66-90 above of this Complaint.

92.     On at least one occasion within the past year, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the Fraudulent Account.

93.     On at least one occasion within the past year, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Mr. Kharfan with respect to the Fraudulent Account.

94.     On at least one occasion within the past year, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to delete the Fraudulent Account.

95.     On at least one occasion within the past year, by example only and without limitation, Equifax violated 15 U.S.C. § 1681c-2 by failing to block the Fraudulent Account.

96.     Equifax has negligently failed to comply with the FCRA. The failures of Equifax

to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to block the information within 4 days of receipt of the FTC ID theft report; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate information which Equifax had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan and that data furnisher that the information was inaccurate; [f] the failure to note in the credit report that Mr. Kharfan disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Equifax to delete; and [h] the failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

97.     The conduct, action, and inaction, of Equifax was negligent, thereby rendering Equifax liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(o).

98.     Mr. Kharfan is entitled to recover reasonable costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(o).

99.     As a result of the conduct, action, and inaction of Equifax, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

100.     WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant Equifax, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

101.     On at least one occasion within the past year, by example only and without

limitation, Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed information.

102.     On at least one occasion within the past year, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Mr. Kharfan with respect to the disputed Information.

103.     On at least one occasion within the past year, by example only and without

104.     limitation, Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to delete the inaccurate information.

105.     Equifax has negligently failed to comply with the FCRA. The failures of Equifax to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Mr. Kharfan after a reasonable request by Mr. Kharfan; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate information which Equifax had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan that the information was inaccurate; [f] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Equifax to delete; and [g] the failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

106.     The conduct, action, and inaction, of Equifax was negligent, thereby rendering Equifax liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

107.     Mr. Kharfan is entitled to recover reasonable costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

108.    As a result of the conduct, action, and inaction of Equifax, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

109.    WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant Equifax, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

### COUNT 5
### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Defendant TransUnion)

110.    Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-30 of this Complaint.

111.    Defendant TransUnion prepared and issued consumer credit reports concerning Mr. Kharfan which previously included inaccurate and derogatory reporting of the Fraudulent Account.

112.    In or around October of 2022, Mr. Kharfan checked his credit report and noticed that there were inaccurate reports from Defendant TransUnion. Therefore, in or around October of 2022, Mr. Kharfan disputed this inaccurate and derogatory information to TransUnion.

113.    In or around November 8 of 2022, the data furnisher verified that the Fraudulent Account was fraudulent and instructed TransUnion to delete the Fraudulent Account by no later than December 8, 2022. Despite TransUnion having been put on notice of the inaccurate and derogatory reporting, TransUnion did not remove the inaccurate and derogatory reporting of the Fraudulent Account from Mr. Kharfan's TransUnion credit report.

114.    TransUnion is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau." Defendant TransUnion regularly obtains and analyzes financial information about consumer transactions or experiences with any consumer.

115.    TransUnion is a "consumer reporting agency" of consumers, as defined by §
1681a(f), and compiles the information into "credit reports," which it provides to third parties.

116.    Despite Defendant TransUnion having received Mr. Kharfan's dispute of the
Fraudulent Account, Mr. Kharfan's FTC ID theft report, Mr. Kharfan's CFPB complaint, and the
data furnisher's investigation results confirming the Fraudulent Account was fraudulent,
TransUnion continued to inaccurately report the Fraudulent Account with an account balance and
late payments.

117.    Continuing to report the status of the Fraudulent Account in this fashion was
significant.

118.    By continuing to report the status of the Fraudulent Account in this fashion, lenders
believed Mr. Kharfan had a recent, major delinquency negatively reflecting on Mr. Kharfan's
creditworthiness by impacting his credit score negatively.

119.    Credit scoring algorithms take Mr. Kharfan's account status into consideration
when generating a credit score and showing this incorrect account status would cause a lower
credit score to be generated.

120.    TransUnion failed to conduct a reasonable investigation and reinvestigation.

121.    TransUnion failed to review and consider all relevant information submitted by Mr.
Kharfan.

122.    TransUnion possessed evidence that the Fraudulent Account was inaccurate;
however, TransUnion failed to correct the information.

123.    TransUnion's reporting of inaccurate information about the Fraudulent Account,
despite evidence that confirmed the Fraudulent Account was inaccurate demonstrates
TransUnion's failure to establish or follow reasonable procedures to assure the maximum possible
accuracy of Mr. Kharfan's credit reports and file.

124.    TransUnion did not conduct any independent investigation after it received Mr.

Kharfan's dispute and, instead, chose to ignore its statutory obligations despite being in possession of evidence that the Fraudulent Account was inaccurate.

125.    Mr. Kharfan has suffered damages as a result of the incorrect reporting and TransUnion's failure to correct the credit report pertaining to Mr. Kharfan.

126.    On at least one occasion within the past year, by example only and without limitation, TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Mr. Kharfan.

127.    TransUnion failed to establish or follow reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit reports and credit files when investigating Mr. Kharfan's dispute of the information contained in Mr. Kharfan's TransUnion credit report.

128.    TransUnion's procedures were per se deficient by reason of these failures in ensuring the maximum possible accuracy of Mr. Kharfan's credit reports and credit files.

129.    TransUnion has willfully and recklessly failed to comply with the FCRA. The failures of TransUnion to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to block the information within 4 days of receipt of the FTC ID theft report; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate information which TransUnion had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan and that data furnisher that the information was inaccurate; [f] the failure to note in the credit report that Mr. Kharfan disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised TransUnion to delete; and [h] the failure to take adequate steps to verify

information TransUnion had reason to believe was inaccurate before including it in the credit report of the consumer.

130.    The conduct, action and inaction of TransUnion was willful, thereby rendering TransUnion liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

131.    Mr. Kharfan is entitled to recover reasonable costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

132.    The appearance of the Fraudulent Account on Mr. Kharfan's credit report, namely, the Fraudulent Account identified by Mr. Kharfan in Mr. Kharfan's dispute to TransUnion, was the direct and proximate result of TransUnion's willful failure to maintain reasonable procedures to assure the maximum possible accuracy of Mr. Kharfan's credit report in violation of the 15 U.S.C. § 1681e(b).

133.    As a result of the conduct, action, and inaction, of TransUnion, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

134.    WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant TransUnion, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1640(a)(1); [2] statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); [3] statutory damages pursuant to 15 U.S.C. § 1640(a)(2); [4] after reasonable showing by evidence in the record or proffered by Mr. Kharfan which would provide a reasonable basis for recovery of such, punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); [5] costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(3) and 1681n(a)(3); and [6] any other relief that this Court deems proper under the circumstances.

**COUNT 6**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**

(Against Defendant TransUnion)

135.    Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-30 and 110-134 above of this Complaint.

136.    On at least one occasion within the past year, by example only and without limitation, Transunion violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the Fraudulent Account.

137.    On at least one occasion within the past year, by example only and without limitation, Transunion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Mr. Kharfan with respect to the Fraudulent Account.

138.    On at least one occasion within the past year, by example only and without limitation, Transunion violated 15 U.S.C. § 1681i(a)(5) by failing to delete the Fraudulent Account.

139.    On at least one occasion within the past year, by example only and without limitation, Transunion violated 15 U.S.C. § 1681c-2 by failing to block the Fraudulent Account.

140.    Transunion has negligently failed to comply with the FCRA. The failures of Transunion to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to block the information within 4 days of receipt of the FTC ID theft report; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Mr. Kharfan; [d] the failure to promptly and adequately investigate information which Transunion had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Mr. Kharfan after being advised by Mr. Kharfan and that data furnisher that the information was inaccurate; [f] the failure to note in the credit report that Mr.

Kharfan disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Transunion to delete; and [h] the failure to take adequate steps to verify information Transunion had reason to believe was inaccurate before including it in the credit report of the consumer.

141.    The conduct, action, and inaction, of Transunion was negligent, thereby rendering Transunion liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(o).

142.    Mr. Kharfan is entitled to recover reasonable costs and attorneys' fees from Transunion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(o).

143.    As a result of the conduct, action, and inaction of Transunion, Mr. Kharfan suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

144.    WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendant Transunion, awarding Mr. Kharfan the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

### COUNT 7
### VIOLATION OF THE FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT (FDUTPA) Fla. Stat, § 501.201 *et seq*.

(Against Defendants Experian, Equifax, and TransUnion)

145.    Mr. Kharfan incorporates by reference paragraphs ¶¶ 1-30 and 110-134 above of this Complaint.

146.    This is an action founded on the CRAs violation of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 et seq. ("FDUPTA").

147.     The conduct alleged in this Complaint against the CRAs constitute unconscionable acts or practices, or unfair or deceptive acts and/or unfair practices in the conduct of any trade or commerce.

148.     The CRAs have committed unlawful acts and practices, defined in Fla. Stat. § 501.204 as "(1) unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" that extend beyond their obligations under the FCRA, by (i) knowingly, intentionally, and continuously misrepresenting the Fraudulent Account as Mr. Kharfan's debt although it possessed evidence and actual notice that the underlying account was, in fact, fraudulent as confirmed by Barclays and; (ii) deceptively portraying their credit reporting systems as reliable and compliant with industry standards while failing to take the necessary corrective action after being notified by Barclays that the disputed account was fraudulent and notified via telephone various times by Mr. Kharfan and his assistant of the same; and (iii) creating an environment in which Plaintiff was forced to accept unfavorable lending terms due to reliance on materially false credit reporting, an unfair trade practice that harmed Mr. Kharfan beyond a mere credit report inaccuracy.

149.     MR. Kharfan suffered actual damages as a result of the conduct of the CRAs as alleged in further detail above.

150.     It has been necessary for Mr. Kharfan to retain the undersigned to represent him in this action.

151.     Mr. Kharfan will incur costs and other related expenses to bring this action and is entitled to recover his attorney's fees and costs pursuant to §501.2105 (Fla. Stat.).

152.     WHEREFORE, Mr. Kharfan, respectfully, requests this Court to enter a judgment against Defendants Equifax, Experian, and TransUnion, awarding Mr. Kharfan the following relief: [1] actual damages suffered by Plaintiff as a result of Defendants' unfair and deceptive trade practices, pursuant to Fla. Stat. § 501.211(2);); [2] attorney's fees and costs pursuant to Fla. Stat.

§ 501.2105; and [3] any other relief that this Court deems appropriate under the circumstances.

Dated: March 8, 2025                                          Respectfully Submitted,

                                                             / s/ *Monique N. Reyes*

                                                             **MONIQUE N. REYES, P.A.**
                                                             Monique N. Reyes
                                                             FL Bar No. 1026823

                                                             Monique N. Reyes, P.A.
                                                             6353 Bird Road
                                                             Miami, FL 33155
                                                             Telephone: (786)614-0666
                                                             Email: law@moniquereyes.com
                                                             moniquereyeslaw@gmail.com

                                                             *Attorney for Plaintiff Gamil Kharfan*

# EXHIBIT A

**LUXURY CARD.**

Card Services
P.O. Box 8827
Wilmington, DE 19899-9932

AB 01 034478 42527 H 79 A
Gamil Kharfan
APT 1605, 90 SW 3RD ST
MIAMI FL 33130-4021

08-NOV-2022
Account ending in 9981

*Regarding Your Mastercard® Black Card*TM

Dear Gamil Kharfan:

This letter confirms that the fraud investigation has been completed on the above referenced Mastercard Black account. After conducting our investigation, we have determined that you are not responsible for the reported fraudulent activity. Please allow up to 30 days for the consumer credit reporting agencies to remove any fraud-related information from your credit report.

Please note that if the merchant is able to validate the transaction(s), we may need to revisit your fraud claim. Depending on the information provided by the merchant, the transaction(s) could be placed back onto your account. If this happens, we'll provide a written explanation along with any relevant documentation.

If you have any questions or concerns, we're available at 888-232-0778 (ADA/Accessibility Services - Please use relay services 711) from 8:00 am to 8:00 pm ET Monday through Friday.

Sincerely,

Card Services