UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
CASE NO: 1:25-CV-21088-CMA

GAMIL KHARFAN, an individual,

      Plaintiff,

   v.

EQUIFAX INFORMATION
SERVICES, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,
AND TRANSUNION LLC,

      Defendants.

## DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant, Equifax Information Services LLC ("Equifax"), by and through

undersigned Counsel, hereby moves the Court to dismiss Plaintiff's Complaint

pursuant to 12(b)(6) of the Federal Rules of Civil Procedure for failure state a claim

upon which relief can be granted, and shows the Court as follows.

## INTRODUCTION

Plaintiff filed his Complaint in this Court on March 8, 2025. (Doc. 1.)  In his

Complaint, Plaintiff alleges that "[o]n or about October of 2022, [he] discovered a

fraudulent Barclays MasterCard account . . . appearing on his credit reporting with

late payments, causing [his] credit score to decrease drastically." (*Id*. ¶ 12.) He

claims that he "promptly" disputed the allegedly fraudulent account "with each

317289986v.1

CRA," which disputes allegedly included an "FTC identity theft report," but as of "November 2022, [he] had yet to receive any written investigation results from the CRA's within a timely manner[.]" (*Id.* ¶¶ 13-14, 18.) He claims that, as a result of "Defendants' failure to remove the Fraudulent Account in a timely manner, [he] was unable to close on his home purchase in November 2022 under the pre-approved 6% conventional loan." (*Id.* ¶ 19.) He claims that the delay forced him to incur additional lease expenses, that he "ultimately had to secure an 8% 40 year statement loan,"[1] and that he closed on the purchase of the property on January 26, 2023. (*Id.* ¶¶ 13-14.) Plaintiff claims that the CRAs continued reporting the Fraudulent Account on his "credit report"[2] until "sometime in March of 2023" (*id.* ¶ 18), even

---

[1] The implication here necessarily being that the allegedly fraudulent account was still in his credit files, and, therefore, was allegedly included in consumer reports published by the CRAs in connection with his loan applications, resulting in non-approval of the favorable loan terms and approval only of the unfavorable loan terms.

[2] The term "credit report" is a colloquialism, not defined by the FCRA. It can variously be used to denote a credit "file," 15 U.S.C. § 1681a(g) ("the information on that consumer recorded and retained by a consumer reporting agency"), a "disclosure" of information in a credit file, 15 U.S.C. § 1681g(a) ("consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request"), or a "consumer report," 15 U.S.C. § 1681a(d) ("any . . . communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness . . . . for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, or other permissible purposes). In this paragraph, Equifax understands Plaintiff to allege that Equifax continued to report the allegedly fraudulent account in his credit file until March 2023.

317289986v.1

though the data furnisher allegedly "instructed Equifax to delete the Fraudulent account by no later than December 8, 2022," (*id.* ¶ 69).

On the basis of these factual averments, Plaintiff alleges violations of FCRA § 1681e(b) (reasonable procedures for accuracy in consumer reports), (*id.* ¶ 88), FCRA § 1681i (reasonable reinvestigation of consumer dispute), (*id.* ¶ 92, *et seq.*), and FCRA § 1681c-2 (blocking of disputed information upon receipt of valid identity theft report), (*id.* ¶ 95, *et seq.*).[3]

Plaintiff also alleges a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201 *et seq.*, on the basis that Equifax i) "misrepresent[ed] the Fraudulent Account as [his] although it possessed evidence and actual notice that [it] was, in fact, fraudulent," ii) "deceptively portray[ed] [its] credit reporting system[] as reliable and compliant with industry standards while failing to take corrective action after being notified by Barclays that the disputed account was fraudulent," and iii) "create[ed] an environment in which [he] was forced to accept unfavorable lending terms[.]" (*Id.* ¶ 148.)

Because Plaintiff's FCRA claims are time-barred and his state law claim fails to state a claim upon which relief can be granted, Equifax moves to dismiss.

---

[3] Although Plaintiff formulaically recites that these violations occurred "within the past year," that non-specific recitation is incompatible with the specific factual allegations made in the Complaint, including the allegation that Equifax continued to report the allegedly fraudulent account in Plaintiff's credit file "until . . . March of 2023." (*Id.* ¶ 18.)

-3-

**STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard required a plaintiff to show at the pleading state that success on the merits is more than a "sheer possibility." *Id*. The court must take the plaintiff's well-pled allegations as true; however, Plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires an identification of the elements of the plaintiff's claim, *see id*., at 675 (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . ."), followed by an analysis of whether the complaint's factual allegations meet those elements.

**ARGUMENT AND CITATION TO AUTHORITY**

**I.     Plaintiff's FCRA Claims Are Facially Time-Barred**

Plaintiff's Complaint premises various FCRA violations upon the alleged submission of a dispute regarding an alleged "Fraudulent Account" to Equifax in October 2022, and the implied publication by Equifax of consumer reports

-4-

317289986v.1

containing the allegedly inaccurate "Fraudulent Account" between October 2022 and January 2023. (*See supra*, at 1-3.) Although Plaintiff formulaically recites that these violations occurred "within the past year," (Compl. ¶¶ 82, 103), that non-specific recitation is incompatible with the specific factual allegations made in the Complaint, including the timing of the only dispute specifically identified, the date range of the implied consumer reports' publication, and allegation that Equifax continued to report the allegedly fraudulent account in Plaintiff's credit file "until . . . March of 2023," (*id*. ¶ 18). In these circumstances, the court is authorized to credit the more specific factual allegations (that events supporting the claims occurred October 2022-January 2023) over those that are merely generalized or conclusory in nature (that violations occurred within the past year). *See Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

Because the specific events alleged in the Complaint as supporting Plaintiff's FCRA claims occurred between October 2022 and January 2023, the claims are facially time-barred, and, therefore, subject to dismissal. "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate" if "it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotations omitted), *abrogated on other*

*grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *accord AVCO Corp v. Precision Air Part, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

Section 1681p of the FCRA sets the statute of limitations at "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability." 15 U.S.C. § 1681p(1).[4] The two year limitations period in § 1681p(1) begins to run when "a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012); *accord Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 130 S.Ct. 1784, 1794, 176 L.Ed.2d 582 (2010) (constructive discovery generally read into discovery statutes).

Here, Plaintiff alleges that, after he sent a claimed dispute to Equifax in October of 2022, by "November of 2022, [he] had yet to receive any written investigation results from the CRA's within a timely manner" and "accordingly" he "was forced to reschedule [his] closing date[.]" (Compl. ¶ 14.) Thus, from the face of his Complaint, Plaintiff claims to have known in "November of 2022" that Equifax had allegedly failed to provide "any written investigation results . . . within a timely manner." Assuming Plaintiff's factual allegations are true, it was at this

---

[4] The statute also provides that all claims arising from an alleged violation will repose "5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p(2).

317289986v.1

point that his purported § 1681i claim accrued.[5] *See Simmons v. Trans Union, LLC*, 712 F.Supp.3d 629, 633-643 (D. Md. 2024). Under § 1681p, he was required to file his complaint by ***November of 2024***. As he did not file until ***March of 2025***, however, his purported § 1681i claim (and his purported § 1681c-2 claim) is time-barred.

Plaintiff also alleges in his Complaint that "[a]t closing in late November of 2022, [his] credit file was still incorrect," (Compl. ¶ 16.)  Although he does not explicitly claim that Equifax published an "incorrect" consumer report to this lender in late November of 2022, the Complaint implies such an allegation, given Plaintiff's allegation that his "credit file was still incorrect" at the November closing. Plaintiff then alleges that he "struggled to find another loan," but ultimately did so, albeit at less favorable terms, and he states that he closed on his property "on January 26, 2023." (*Id*. ¶¶ 21, 26.)  Although he does not explicitly claim that Equifax published an "incorrect" consumer report to *this* lender either, at some point prior to January 26, 2023, the Complaint implies such allegation, given Plaintiff's claim that he was "finally able to close" only "after enduring significant hardship due to the Defendants' wrongful reporting practices." (*Id*. ¶ 26.)

---

[5] Drawing the inference from Plaintiff's factual allegations that his claimed dispute letter allegedly included an FTC identity theft report, his purported § 1681c-2 claim accrued even earlier, as that section requires action by a CRA within "4 business days." 15 U.S.C. § 1681c-2(a).

A consumer report is not a nebulous, ongoing activity. It is a discrete publication of information bearing on creditworthiness to a third party. *See Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015) ("A 'consumer report' requires communication to a third party, while a 'file' does not.").[6] As the specific instances of the publication of a consumer report that Plaintiff even impliedly alleges in the Complaint occurred, at the latest, by January 2023, and, as shown above, he alleges knowledge of the claimed "incorrect" reporting, he was required to file his complaint within two years of the alleged publication. *See Rizvi v. Experian*, No. 20-cv-14148, 2021 WL 3727885, at *9 (S.D. Fla. Aug 2, 2021) ("Many courts have found that discovery of the violation occurs when the consumer becomes aware that his or her credit information is being reported inaccurately as demonstrated by a dispute of the information with a consumer reporting agency.") (collecting cases); *Hyde v. Trans Union, LLC*, No. 21-cv-230, 2023 WL 2816029, at *4 (W.D. Mich. Feb. 3, 2023) ("[T]he statute of limitations began running . . . when Hyde was made aware of the allegedly inaccurate reports, and expired [two years later].")  Thus, at the latest, Plaintiff was required to plead his § 1681e(b)

---

[6] While Plaintiff alleges that the allegedly Fraudulent Account remained in his credit file until March 2023, the FCRA "does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information[.]" *Hyde v. Hibernia Nat. Bank*, 861 F.2d 446, 449 (5th Cir. 1988). Rather, it is the inclusion of inaccurate information in a consumer report – communicated to a third party for purposes of credit, insurance, etc. – because of a failure to follow reasonable procedures that gives rise to liability.

claims in court by January 2025. As he did not file this action until March 2025, the claims are time-barred.

## II.     Plaintiff Has Failed To Properly Plead His FDUPTA Claim

The FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). "What one must allege to state a claim under the FDUTPA is (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Galstaldi v. Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045, 1057 (S.D. Fla. 2009) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla.2d DCA 2006)).

Here, Plaintiff premises an FDUTPA claim upon, *inter alia*, an allegation that Equifax "deceptively portray[ed] [its] credit reporting system[] as reliable and compliant with industry standards[.]" (Compl. ¶ 148.)  Thus claim sounds in fraud, and, as such, is required to meet the special pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *See Librizzi v. Ocwen Loan Servicing, LLC*, 120 F.Supp.3d 1368, 1381 (S.D. Fla. 2015) (concluding that FDUTPA claim was subject to Rule 9(b) where the operative complaint alleged the defendant violated it "through deception").

Rule 9(b) requires that, to plead claims sounding in fraud, a complaint must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

317289986v.1

Plaintiff's Complaint, however, does not state with particularity how Equifax is supposed to have "deceptively portray[ed] [its] credit reporting system[] as reliable and compliant with industry standards[.]"  In other words, the Complaint "does not contain sufficient allegations to state a FDUTPA claim under Rule 9(b) because it does not 'set[ ] forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what defendants obtained as a consequence of the fraud.'" *Librizzi*, 120 F.Supp.3d at 1381 (quoting *U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). Accordingly, this claim is due to be dismissed.

## CONCLUSION

For the reasons set forth herein Equifax respectfully requests the Court grant its Motion, dismiss it from this action, and grant all other relief as the Court deems appropriate.

317289986v.1

-11-

DATED:  April 18, 2025

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Paige Vacante*
    Paige Vacante, Bar No. 1019135
    pvacante@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive
    Suite 8000
    Chicago, Illinois  60606-6448
    Telephone:  (312) 460-5000
    Facsimile:  (312) 460-7000

*Counsel for Defendant*
*Equifax Information Services LLC*

317289986v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2025, I presented the foregoing

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S MOTION TO

DISMISS FOR FAILURE TO STATE A CLAIM with the Clerk of the Court using

the CM/ECF system, which will send notification of such filing to all counsel of

record.

*/s/ Paige Vacante*

Paige Vacante
*Counsel for Defendant*
*Equifax Information Services LLC*

317289986v.1